No. 69.—MERCHANTS BANK OF MACON, plaintiff in error, *vs.* CHARLES E. TAYLOR, administrator, and CAROLINE M. RAWLS, administratrix, of JOHN RAWLS, deceased, defendants in error.

[1.] In a case between an incorporated bank and a stockholder of the bank, the books of the bank are admissible as evidence for the bank.

[2.] The administrator of John Rawls and a certain bank entered into the following submission:

"The undersigned have referred to the decision of H. and H., the matter of controversy growing out of the agreement of which the following is a copy: 'We the undersigned, do agree to take each of us an equal part of all the stock of the Bank of Hawkinsville, which our agent, Joshua G. Moore, may purchase from Robert Collins, or the Insurance Bank of Columbus, at the prices which he may agree upon, and to pay for the same as required by him.

ERASTUS GRAVES.
H. H. TARVER.
J. G. MOORE.
JOHN RAWLS.'

And John Rawls having died, one of the undersigned, as his administrator, has united in the reference of the question of the obligation of the contract on the said estate he represents, in conjunction with the other party to this instrument, to arbitrament."

There were no parties to the submission but the administrator and the bank.

*Held,* that, by this submission, the question, whether the administrator was liable *to the bank* under the contract, was referred to the arbitrators.

In Equity from Bibb Superior Court. Tried before Judge POWERS, at May Term, 1856.

This bill was filed by Charles E. Taylor, administrator, and Caroline M. Rawls, administratrix of John Rawls, deceased, against the Merchants Bank of Macon; and among other things, complainants allege that in the year 1844, their intestate, John Rawls, being a stockholder in the Bank of Hawkinsville, afterwards changed to the *Merchants Bank of Macon,* entered into the following agreement with Erastus Graves, Joshua G. Moore, and H. H. Tarver, to-wit:

" We the undersigned do hereby agree to take each of us an equal part of all the stock of the Bank of Hawkinsville, which our agent, John G. Moore, may purchase from Robert Collins, or the Insurance Bank of Columbus, at the prices which he may agree upon, and to pay for the same as required by him.

Macon, 6th January, 1844.

[Signed.]    ERASTUS GRAVES.
             H. H. TARVER.
             J. G. MOORE.
             JOHN RAWLS."

Soon after this agreement, Rawls died intestate, and complainants were appointed his administrator and administratrix, and being desirous of ascertaining the liabilities of their intestate under said contract, complainant, Charles E. Taylor, as administrator, and the Merchants Bank, made the followng, submission of reference to the arbitrament of A. H. Hansell and Iverson L. Harris, Esq., to-wit:

" Macon, 13th January, 1845.

The undersigned have referred to the decision of Augustus H. Hansell and Iverson L. Harris, the matter of controversy growing out of the agreement of which the following is a copy: [see agreement above set forth,] and John Rawls, one of the parties to said contract having died, one of the undersigned, as his administrator, anxious to discharge his duty in relation thereto, with a view to the attainment of legal advice to guide him in the discharge of his duty as administrator, has united in the reference of the question of the obligation of the contract on the said estate he represents, in conjunction with the other party to this instrument, to the arbitrament and legal opinion of the before named attorneys at law. In the event of their disagreement, they are author-

ized to select a third person, being an attorney at law, as an umpire.

The undersigned agree to abide such decision.

·JAMES DEAN,
President Merchants Bank.
CHARLES E. TAYLOR,
Administrator."

The Arbitrators made the following award, viz :

"Macon, 13th January, 1845.

Upon an examination of the stockholders, and the statements of Messrs. Robert Collins and James A. Everett, we are satisfied that 591 shares of the stock were purchased by Joshua G. Moore of Dr. Collins, of which 135 were transfered to General Tarver on the day of the within recited agreement. One hundred and fifty on the 16th January, 1844, and seventeen shares on the 12th January, 1844, to Joshua G. Moore. As to the remaining 289 shares of stock, we are also satisfied by the certificate of Mr. Moore, that that was owned by Dr. Collins, and that it also was purchased under said agreement by Moore. The quantity of bank stock to which the estate of Mr. Rawls is entitled of the foregoing purchase is 147 shares, which should be entered on the books of the Cashier by Dr. Collins, who makes the transfer, if it has not heretofore been done, and a certificate of the same issue forthwith to the estate of Mr. Rawls. As to the binding force of the contract on the estate of Mr. Rawls, it admits of no doubt in our minds, and we concur in advising Mr. Taylor, the administrator of Mr. Rawls' estate, to carry out the contract without a resort to law, which would be unproductive and expensive to the estate.

IVERSON L. HARRIS.
AUGUSTUS H. HANSELL."

Upon this award, Taylor, administrator of Rawls, paid to the Merchants Bank of Macon eleven thousand six hun-

dred and forty-two dollars and forty cents, and took the following receipt, to-wit:

"MERCHANTS BANK OF MACON.
6th February, 1845.

Received of Charles E. Taylor, administrator of the estate of John Rawls, deceased, the sum of $11,642 40, in full payment for one hundred and forty-seven shares of capital stock of this bank, taken by said administrator under an agreement made by Joshua G. Moore, John Rawls, H. H. Tarver and Erastus Graves, to take equal portions of the stock purchased by Joshua G. Moore of Robert Collins or the Insurance Bank of Columbus; said agreement dated 6th January, 1844. This being the proportion of John Rawls' stock under said agreement, a copy of which is hereto appended.

(Signed.)  JAMES DEAN.
President."

The bill charges that at the death of Rawls, said bank was indebted to him on account, about the sum of $12,000, which has never been paid nor accounted for. That the administrator and the arbitrators were deceived by false statements in reference to the purchase of said stock by Moore, and the amount he paid for the same. That the affairs of said bank were managed and controlled, after its removal to Macon, almost exclusively by H. H. Tarver and his family, and conducted solely with reference to their interest, without regard to other stockholders. That none of the other parties to said agreement ever paid for their proportion of said stock, and the same, if bought by Moore, was purchased at not more than $10 per share; whereas complainants paid, and was induced so to do by the false statement of the bank and others, the full *par* value of said stock.

The bill prays that said sum be refunded to them, and that the bank account with them generally, for all sums due and owing by it to complainant's intestate.

The defendants answered the bill; denied all fraud or misrepresentation, but admitted the facts as to the agreement, award and payment of $11,643 40, set forth in the bill.

Pending the bill, a sale of all Rawls' stock in said bank (197 shares) was made to Isaac Scott, but by an instrument in writing signed by Scott as President thereof, and countersigned by the Cashier, it was provided and agreed that said sale and transfer should not affect the rights of the parties to this suit, but that the same should remain and be adjudicated, as if said sale had not been made.

The jury upon the proofs and the charge of the Court, found for the plaintiffs the sum of $11,642 40, with interest from 9th February, 1845, and directed the stock to be transferred by complainants to the bank.

A motion was submitted for a new trial, which being refused, defendant excepted and assigned error. The following are the grounds contained in the rule nisi for a new trial, to-wit:

1st. Because the Court after allowing the complainants to read in evidence, from a book of the bank, the two accounts with John Rawls, refused to permit defendant to introduce other books of the bank, containing other accounts with Rawls and his estate, made while he was a stockholder.

2d. Because the Court refused to let defendant introduce the day book or cash blotter of the bank, or to read therefrom entries of debit and credit with John Rawls.

3d. Because the Court refused to allow the defendant to introduce any of the books of the bank; holding that none but such as complainants had examined, after evoking them, were admissible for defendant.

4th. Because after defendant had introduced the record of a former case between the same parties, showing the plea of set-off therein relied on, the Court held, that, it being uncertain whether it covered this case, defendant must prove that

the items there pleaded as set-off were insisted on, and evidence offered as to them on said former trial.

5th. Because the Court refused to charge the jury as requested, "that if they should believe from the evidence that the assets or any of them paid by Taylor ought to be returned to him, that they must oblige plaintiffs to do equity, by deducting the price that Rawls was bound to pay for the 147 shares bought by his agent Moore," but qualified said request as follows; " That Rawls' estate was bound to pay in any event only what Moore agreed to pay, and if they believed that Moore agreed upon a less price than $79 20, as for instance upon 10 cents, then they might decree that the bank should return all the overplus."

6th. Because the Court refused to charge that the sale of the stock by the administrators of Rawls, after their suit brought, deprived them of any right to recover, and because he did charge on this point "that the agreement between Taylor and Scott, as to the sale of said stock, had prevented, by its terms, any such consequence."

7th. Because the Court refused to charge as requested, " that Rawls being bound by the agreement to pay for the stock at such price as Moore might agree upon, and to pay for the *same as required by him*, if the jury believed that Moore required Rawls to pay to the Merchants Bank, he was bound to do so." The Court saying that it knew of no evidence that Moore had so required of Rawls.

8th. Because the Court charged that Moore's agency for Rawls ceased at, Rawls' death, and that therefore if they were satisfied from evidence, or if there was any evidence that the stock charged to Rawls or any part of it was purchased by Moore after Rawls died, said purchase was void and complainants ought to recover.

9th. Because the Court charged that by the agreement to arbitrate, nothing but the legal question, whether Rawls was bound on the paper, was submitted to the arbitrators, and the questions as to whether Rawls was bound to pay the

*bank*, or as to the *amount* he was to pay, were not submitted to or determined by said arbitrators.

10th. Because the Court held that the contract signed by Rawls and others, only bound the parties to J. G. Moore or to his order, and that defendant sought to stand in Moore's shoes; but if Moore had never given any order as to Rawls' stock, his representatives might have rights, and might yet call on Rawls' estate, and this settlement made by Taylor with the bank would not protect complainants.

11th. Because the Court charged that if he erred, the party dissatisfied could take the case up to the Supreme Court. But if they disregarded the law as he laid it down, the other party might be deprived of that right.

12th. Because the Court charged that the award does not decide that the administrators of Rawls' estate should pay or account to the bank for the stock in question.

13th. Because the Court charged that it must appear in evidence what Moore paid for the stock; and if it did not, that the bank had no right to retain what it had received from Taylor for said stock.

14th. Because some hours after the jury had been charged with the case, and after the Court had adjourned, the Judge received a note from the foreman stating that there was no chance for the jury to agree, and asking to be discharged, and stating that two of the jury were sick, so much so that they were not able to be in the room. To which, the Judge at Chambers replied, without the knowledge or assent of defendant, as follows:

"GENTLEMEN, I have received your note asking me to discharge you from the consideration of the case before you; of course it is no pleasure to me to punish you by keeping you confined this unpleasant evening, but a sense of duty and public necessity requires that I should exhaust all means in my power to accomplish the business of Court. If a mistrial is to be had in every case, it is folly to open the

Court at all, as all trials would be so much time thrown away; make a determined effort to agree; consider the charge of the Court—by that you are absolutely bound; go over the evidence and see if you cannot come to the same mind. I commend to you a spirit of conciliation, so far as conscience will allow to each, and an earnest desire to make a verdict; because it is your duty to agree unquestionably if you can. As it is, I cannot discharge you, though I sympathize with you in your disagreeable situation.

Respectfully, &c.,<br>A. P. POWERS."

15th. Because the verdict was contrary to law and the evidence.

JOHN RUTHERFORD & C. B. COLE, for plaintiff in error.

WHITTLE, for defendants in error.

*By the Court.*—BENNING, J. delivering the opinion.

Were the books of the bank admissible as evidence for the bank?

[1.] We think they were; Rawls was a stockholder in the bank.

" The books of public companies, or copies of them, are evidence between those who are interested in them, as against each other, or against the company; as the books of the East India Company, in a cause between the parties having stock there." 1. *Stark Ev.* 293.

This disposes of the questions involved in the first, second and third ground of the motion for a new trial.

The fourth and fifth grounds of the motion were not insisted on.

There is manifestly nothing in the sixth ground of the motion. It was a special part of the terms of the sale of the

stock by the administrator, that the sale was not to affect his rights, or the rights of the bank in this suit.

The seventh ground of the motion was not insisted on.

As to the eighth ground, we think that the charge referred to in it was erroneous. The reasons for that opinion, will appear in what will be said on the 9th, 10th, 12th and 13th grounds of the motion, and will be found to be such as grow out of the submission and the award.

The questions involved in those last four grounds are, what matters were referred to the arbitrators, and what matters were decided by the arbitrators?

We think that two questions were referred to and were decided by the arbitrators, viz: 1st. Whether the administrator of Rawls was liable at all on the paper signed by Graves, Tarver, Moore and Rawls. 2d. Whether, if liable at all, he was liable *to the bank?*

As to what questions were *referred* to the arbitrators:

The submission opens thus : " The undersigned," (the administrator and the President of the bank,) "have referred to the decision of Augustus H. Hansell and Iverson L. Harris, the matter of the controversy growing out of the agreement of which the following is a copy," (the agreement contained in the paper aforesaid, signed by Graves, Tarver, Moore and Rawls.)

In the expression, "the matter of the controversy growing out of the agreement," is contained an admission, that there *was* a controversy arising out of that agreement ; and a controversy *between* the administrator and the bank ; for the two were the only parties to the submission.

The concluding part of the submission shows what that controversy was about. It says that the administrator " has united in the reference of the question of the obligation of the contract on the said estate he represents, in conjunction with the other party to this instrument, to arbitrament."

Now it is of course to be presumed, that the question about "the obligation of the contract" must have been some

question growing out of the "controversy" between the administrator and the bank, else why should the bank have been a party to the submission?

But what question about the obligation of the contract could grow out of a controversy between the administrator and the bank, except some question as to whether the administrator was under any liability by the contract *to the bank.* It is certain that the contract could impose no obligation on the bank, for the bank was not a party to the contract. It is equally certain that the contract might impose obligations on the administrator, for Rawls, the administrator's intestate, was a party to it.

[2.] The question then, "the reference of which" is spoken of in the concluding part of the award, must have been some question as to whether the administrator was under any obligation arising from the contract *to the bank.*

And in that question was involved, of necessity, the question whether the administrator was under any obligation *at all,* arising from the contract.

As to what questions were *decided* by the arbitrators:

The award, it is true, seems to have been framed without a very clear idea of what the award ought to contain, but still it is such, that taking the whole of it together, we may pretty safely say that it decides that the administrator was liable *to the bank.*

Any doubt about the correctness of this conclusion must be removed by considering that the only practical question submitted to the arbitrators was some question as to whether the administrator was bound to *the bank* or not, and that as soon as the award was made, the *parties* treated it as deciding, that the administrator was bound to *the bank.* As soon as the award was made, the administrator settled with the bank for 147 shares of the stock.

Deciding that the administrator was liable to the *bank,* was also, of necessity, deciding the question whether the administrator was liable at all or not.

But the question, what the administrator was *to pay* to the bank for the stock, was not decided by the award.

In reference to that question, we merely say, (what must be obvious,) that, if there was a price for the stock agreed upon by Moore and the bank, and the agreement for the price was one that was fair on the part of both Moore and the bank towards Rawls, and fair on the part of the bank towards Moore, that price is what the administrator was bound to the bank for; but that if there was no price at all agreed on, or no price fairly, as aforesaid, agreed on, then the market value of the stock at the time when it was bargained for by Moore, was what the administrator was bound to the bank for.

These remarks sufficiently dispose of every thing involved in the 9th, 10th, 12th and 13th grounds of the motion.

In reference to the 11th ground, we do not feel called upon, considering the turn the case takes, to say more than that the remark of the Court of which that ground complains, was certainly *unnecessary* and was perhaps improper.

And this we repeat, but with more emphasis, of what is complained of in the 14th ground of the motion.

A new trial being the necessary result of the disposition that has been made of the grounds already considered, it is unnecessary, and would, therefore, perhaps be improper, to consider the questions, on the sufficiency of the evidence to support the verdict, made in the 15th and 16th grounds. And those questions are the only ones that have not been directly or indirectly considered.

Judgment reversed.